We have six cases on the calendar. Three federal cases, two from district court and the county office, and three government employee cases. Two of them are being submitted in the briefs and are therefore not being argued. Our first case is for Chadwell v. MSPB and OPM. Mr. Peter. Thank you, Your Honor. And thank you for hearing my client's case today. As we see this, this is a matter of insufficiency of pleadings relating to jurisdiction. Our contention, as you can see from the briefs and from the record of what Mr. Chadwell submitted as his case evolved, that we feel that he sufficiently pleaded as to jurisdiction in terms of the Mapstone decision, that is at the merit system protection level, and the decision that I've issued from this court. Mr. Chair, the one-year rule in this case did not deny Mr. Chadwell the position he sought, but simply the opportunity to retake the exam. Why is that an employment practice? We believe it's an employment practice, Judge Lane, because as Chairman McPhee has said in his separate opinion, it affects measurement in terms of one of the criteria that are looked at in terms of an applicant. It affects measurement because, as I think he accurately stated, we have the knowledge of what Mr. Chadwell's accomplishments are now for the AR part of the application. During the interval from the 2007 application to when it was foreclosed in 2008, he had two merit awards, so I think we can state with confidence that his AR would have been increased. That's a measurement criterion, so that's why we believe it did. But that's just your expectation. That he hasn't been removed from the list of eligible candidates, and he is not otherwise disqualified from consideration. He's still available and still has the opportunity to be considered. So the question I have is why isn't the one-year rule simply an opportunity for the government to just control its examination process that doesn't affect his ability? He's not disqualified, as opposed to some other cases, like the Vassar case or the Vessar case, and it seems to me all the cases you cite are cases where applicants have been somehow impeded or precluded from the opportunity to be considered. We see this as an employment practice related to measurement because, as compared to the 2008 cohort, Mr. Chadwell, by attempting to get into that cohort and being prevented for the reasons that we know of, was treated differently than others, for example, at least as Chairman McPhee said, that others who applied in 2008 who had not applied before would have been able to put in their accomplishments to date, whereas he was, in effect, frozen at 2007. This is a procedural practice. If it doesn't go to the merits, he's still on the list. So why is it an employment practice? Well, for the reasons that we've argued before, and we agree with what Chairman McPhee has said, is that it does affect measurement in terms of one of the criteria that they're measuring with respect to him is his accomplishment record. It affects that directly because he is not able to bring his accomplishment record up to date as compared to others of the year 2008 who competed for the position. We see that as very much in line with what Chairman McPhee said in his separate opinion. Your complaint seems to rule out the agency having any limitations on how they administer this. In other words, on any particular day, any particular applicant may have something good happen to them, like an award or something that changes their status. So under your rule, OPM would be precluded from setting any kind of limitations, like you can only do this day after day after day. They'd be subject to folks coming in and wanting to amend their forms, et cetera. Is that your view, that there are no limitations on which they can put to applicants? No. First, I believe the limitations would be, first of all, as we know, that the allegation has to be non-frivolous, but then getting beyond that level, I think it would be with respect to those matters that, as again citing Chairman McPhee, those things that he might have no control. With respect to those things, with respect to what he does not have control over, then I think where there is an increase in achievement, then I think that the record ought to be permitted to take account of a further accomplishment. In order to be fair to the applicant, such as a Mr. Chadlow who gets two merit awards during the interval that we're talking about. But didn't he want to take the test again? I'm sorry? Didn't he want to take the test again? Yes. To retake the test. Well, it's conceivable, is it not, that he would have done worse on the test? It's conceivable, but I believe it is conceivable juxtaposed. But I think it's also, I think we can say with pretty good confidence that with the accomplishments that he had as of 2007, the merit awards in the interval, that he would have increased, at least with respect to the AR card, the accomplishment record. The others, I think, I think there's a fair chance that he would have at least held his own. So I think that he would like that. So he's now, I mean, we're way past this, in 2009. So he had the ability since then to take the test again. Right. And so where's the harm then, at least looking back over the period? I mean, what kind of relief would you seek here, even if you were hurt? What we would seek is a ruling that at least with respect to this type of progress on the part of an applicant who was proposed because of the one-year rule, that for future applicants, there should not be this preclusion of an applicant under the circumstances that happened in this case. But what happens to your client? What does your client get out of this litigation? He would get the benefit of that ruling, and if this were to come up again in his career as he continues to seek employment, then he would have certainly overcome this particular barrier. That's assuming that he hasn't gotten a job in the interim. Sure, sure. Now you mentioned that he loses the opportunity during that one-year period to update his resume. After that one-year period, he can do that, can't he? Right. After the one-year bar has passed, then it would seem to me that he would be as any other applicant. So once again, that emphasizes the procedural nature of this ruling rather than going to the merits. To some extent it does, and I think we, as I indicated in the briefing, that I think we have this constant difficulty of just ascertaining what's procedural and what's substantive. It's actually something that seems to be difficult through the cases at this court level and even at the level of the American Citizens Protection Board in their opinions. There seems to be some difficulty in terms of just placing things along that continuum of what's procedural and what's substantive or merits-based. But during this period, he doesn't get enough of them, so it's hardly merit. The merit issue is procedural, isn't it? During the – are you talking about the period after the one-year or during the one-year? During the one-year, he would not be applied. During that – because of the bar, then he would not – the OPM would not process his application for the reason. The only thing that is – the only thing he prohibited from doing is retaking the exam to hopefully increase his score. He's still considered – he's still on the list of eligible candidates and obviously had not been deemed eligible, then the one-year bar wouldn't apply. So the whole intent of the procedure is simply to provide some workable arrangement where actually more applicants can have the opportunity to be considered so that if an applicant's not qualified, he's not eligible, he or she can take the exam and try again. But once you're qualified, just as a matter of procedure and good order, then the candidate can't retake the exam. So it seems to me what it boils down to here is just a question of whether – how frequently an applicant should be entitled to have the opportunity to try and improve his score. To me, it's entirely perceived. Well, Your Honor, as we've argued, we see that as very much a substantive or merits-based type of thing for the reasons that we've argued because it is – it does affect his accomplishment record, which is one of the measurement standards there. The bar puts him in a different position and to some extent to a disadvantage of somebody who had not been a prior applicant for the reasons that Chairman McVie had said. Would your position be the same if the bar was one month instead of one year? Yes, sir. So in other words, from your point of view, there should be no bar at all? At least this type of bar because this type of bar, as we see it, is a merits-based or goes to the substance there, and to that extent, it is therefore a measurement standard and is therefore comprehended within 103. What if the agency has critical budgetary reasons why it can't do it that frequently? If it had critical budgetary reasons why it could not do it that frequently and yet we still had, hypothetically, the two periods within one year of each other, they still announced it, then I think that the best way to sort that out would be at a hearing. Therefore, he makes his allegation as he has done. We say that he has satisfied the necessary jurisdictional threshold, and at hearing, then the agency puts forth its reasons, the critical budgetary reasons that he cited, of course, and I think that might be the agency's response, but I think you get to a hearing. That's our argument is that he should have at least gotten to the hearing. There are a number of reasons, policy reasons, that the agency has cited, some of which have been used to foreclose this application, but I think that that would be the solution, let him get to a hearing, get past the jurisdictional threshold, and sort it out at the hearing. May I reserve the remainder of my time? We will do that. Thank you. Ms. Connelly, you are arguing for the board. I will be brief. The issue here is whether under even the broadest reading of the term employment practice, the one-year waiting period to take the ALJ exam can be deemed an appealable employment practice, especially where, as here, Mr. Chatwell has not denied consideration for a position. To decide this question, it's necessary first to look at OPM's regulations and secondly at the decisions of this court and the board addressing the point of practice jurisdiction. Certainly because OPM has promulgated the regulation, some deference is owed to OPM's interpretation of the regulation, unless, of course, their interpretation is plainly erroneous or inconsistent with the language. I'm not sure I'm quite clear on that. What does the regulation say? OPM's regulation regarding employment practices first states that the purpose of the employment practice regulations is to establish principles to govern as nearly as possible employment practices of the federal government that affect the recruitment, measurement, regulation... He's not challenging the regulations. You're just simply saying that you've written the regulations and you want to be able to get deference to your application of the regulation. It seems to me to be really a legal question, a completely legal question. And I'm suggesting we have to start with looking at the regulations and if we look at the language of OPM's regulations, and the decisions of this board and the board interpreting those regulations, we would have to conclude that this particular employment practice is a mere procedural rule and not one that's connected to a merit consideration. What if the rule was you get one shot, and that's it, a lifetime shot? You get to take every individual who's taken the AWK exam once, and then he or she is stuck with that score even if they want to stay unregistered for 20 years. Is that a practice? It would not seem to be, Your Honor, as long as the register is still in existence. As long as the register is still in existence. I'm sorry, I didn't understand your answer. It would not seem to be, which of those? My question was confusing. So are you saying it would not seem to be? An appealable employment practice. The practice in issue here... Isn't that much more likely to affect the ability of someone who took, you know, I come in in 1950 and I take the test, and somebody else can't compete with somebody in 1950. You were born in 1950. That's true. And I'm then competing with people who... And I can't update it at all. And you don't think that is more than speculation, that my inability to update it if they were taking the American application is going to affect me in an American's way? I believe you have to look at the rule itself, which would seem to be merit neutral. And that is simply saying that in this particular case, we only have a waiting period. So I guess we will have another opportunity, perhaps. But of course, as you suggest by your example, the M could perhaps decide that they don't have sufficient funds and would not have another exam for many years. But of course, that's not the issue here. Actually, regulation defines employment practices, doesn't it? Yes. That's a CLU, which is an exclusive. CLU is the Development and Use of Examination Qualification Standards Test and Other Measurement Instruments. It doesn't include what we're now talking about. That's correct, Your Honor. It is more similar to the rule at issue in law that would seem to be a pure procedural rule. In law, the issue was the time limit for filing an application for a position and the criteria that would be used to reopen the register. And OPM had argued that this was a mere procedural rule, and the Board agreed, saying that we will give deference to OPM's position and that this certainly is a rule that does not affect merit consideration. Thank you, Your Honor. Your Honor, if you don't have any further questions. No one ever loses because they surrender time. Congress? May I please record I'll be even more brief as intervener? Well, let me ask you a question. I didn't want to interrupt. I'm going to tell you something that's coming up. But let me ask you. You cite in your brief repeatedly the D.C. District Court, Rosemary Collier's opinion in the LJ case that will be now. It seems to me that case, or at least what you cite it for, is a little inconsistent with what's going on here. When you say there's no jurisdiction, there it seems that the government did put on a case. I mean, she applied the standard of arbitrary and imprecious. And she said, well, the government has shown me that there was a good reason for them to limit the amount of times they were doing this. But in this case, you're not advocating that. I mean, you'd have to get to a merits hearing before we get into an arbitrary and imprecious theory, right? Right. Your Honor, we, and I'd like to respond to that point, because the petitioner argued we violated the Chinnery Doctrine by going outside the grounds cited by the board by discussing that opinion. And the government didn't, the OPM didn't cite the case to raise a new argument or to argue that there should be some arbitrary APA type review. We cited it and discussed it simply to underscore the conclusion of the administrative judge that this practice was not, as it's in a merit-based consideration, but just an exercise of OPM's administrative discretion. That case sort of amplifies and underscores the nature of OPM's exercise of its discretion to manage its resources. And that's really the purpose for which we cited and discussed that case. So it doesn't raise a new issue and therefore doesn't contravene Chinnery. Mr. Eggman is arguing that this client should have had a hearing and should have had an opportunity to have this question evaluated, whether this was the proper exercise of the agency's authority in regulating its affairs in those degrees and et cetera, et cetera. What was your reply to that? Oh, the reply is the reason he didn't receive a hearing was because the board judge concluded he didn't allege sufficient non-criminalist facts to establish board jurisdiction. And that is correct. Mr. Eggman argued that he did sufficiently allege a case to show that his score would have improved, that there was a practice here because measurement would have been affected because the score would have improved. I think you must repeat the question. Even if we accept the fact that the notion that the score might have improved was speculation, I gather what he's really arguing is that he just wanted the opportunity to try to do that and just the opportunity to try again. And the argument made in the brief is, well, A, that's not an employment practice for any number of reasons, but part of the mix is that this was just OPM's exercise of its discretion and its policy in this way providing more opportunities for other people. But that's an argument that goes to the propriety of this rule. That sort of assumes that there's some basis to discuss that beyond jurisdictional matters. Perhaps that discussion does overlap with merit-based considerations. In Mr. Eggman's principal brief, he did dedicate some argument space to discussing what he perceives as the irrationality of the rule. So perhaps that counters it. But again, yes, you're correct that we're dealing solely with jurisdictional matters. And therefore, the issues are limited to whether he alleged a set of non-frivolous facts to show a practice within the board's jurisdiction. And we assert that he hasn't done so for two reasons. One, his entire case is predicated on the notion of the improvement of the score from 69 to 74, and he hasn't alleged any set of facts, non-frivolous facts, to show why that case would be approvable to the board. He simply alleges that there's 14 more months of experience during which two awards were given and that in the missed accomplishment record section of the exam, that wouldn't make a difference. I would like the court to look at the evaluation criteria of that section of the exam, which is contained in Joint Appendix 206, which explains that its accomplishment record scores aren't simply based on the amount of time in a position with successful performance. It's based upon the citation of a specific accomplishment and tying that accomplishment to one of the expressed competencies in the vacancy. So you do leave open the possibility that someone could come in and establish, as a threshold matter, that something unbelievable happened during this interim period that everyone would reasonably accept really makes this candidate look better and different than it did before, then do you agree that we would have jurisdiction over the case? Well, no, because he has to allege a set of non-frivolous facts. And so the issue isn't left open. He was given a number of opportunities by the administrative judge to lay out those facts. No, but I'm talking about hypothetically some other person comes in and does lay out, at least makes a non-frivolous allegation that the stuff that happened in the interim was significantly likely that that would have changed the outcome here. Would that person be interested to come to that case? It still remains to be highly speculative. How would that be provable in the interim? Well, he just has to make a non-frivolous allegation. I mean, I don't know where speculative fits within that, but it seems to me that he could put on and off something to satisfy the non-frivolous standard. Perhaps in another case on different facts. But here, again, what are the non-frivolous facts that would improve the score here? A candidate could conceivably come in and say, I've received the Nobel Prize for Science in the interim. But unless he ties that very impressive credential to one of the enlisted competencies, there's no reason to conclude that the score would be changed in any way. The ability to express one's opinions in writing is a competency that A.L. Jason is demonstrating. Again, if you have the Nobel Prize, how does that change? So it all depends on the set of facts that are alleged. And here, there's not a set of non-frivolous facts that were alleged to prove his theory of jurisdiction. But also, the broader deficiency in jurisdiction is that we simply don't have an employment practice at all because the rule itself is entirely procedural and has no relationship to merit considerations at all. Do you have one final brief thought, Mr. Sinclair? I don't, Your Honor. I've addressed all the points that I wanted to make, so I'll simply conclude my brief. Mr. Engle, you have a little bit of time. I'd like to emphasize that it's important to keep in mind that this process is supposed to be open and competitive. And so if you were to go back to your example or your hypothetical judge post about the one-time rule, then we don't have an open, competitive process. Part of what we're trying to emphasize in our effort is that Mr. Chadwell was treated differently in 2008 than a similarly situated individual, let's say, who had not applied before or who had applied unsuccessfully, did not get on the register. And so where you have cohorts in which you have certain persons, such as Mr. Chadwell, foreclosed because of the one-year rule and others who are not foreclosed because of that, then it affects the open and competitive nature of what is supposed to be these types of jobs. And so please keep that in mind as you consider the AR, the accomplishment record aspect, criterion of this, as a measurement. It's measuring him against someone else with respect to criteria in common that they should have in common. And so it's important to keep that in mind. I hope that you will do so. I would also like to mention that, contrary to what the OPM just argued, it's not just that Mr. Chadwell's entire case was premised on that. His case is premised on the inequality of treatment as compared to him, as compared to others who were competing there in 2008, who were not foreclosed for whatever reason by the one-year rule. And so I hope that you would keep that in mind as you consider this. Thank you, Mr. Chairman. Thank you. Thank you.